Thank you. Case No. 14-5278, United States of America v. Tyler James Schaeffer. Arguments not to exceed 15 minutes per side. Mr. Oldham for the appellant. Good morning, Your Honor. Christopher Oldham of Knoxville, Tennessee, bar for the appellant Tyler Schaeffer. I would request court reserve 5 minutes for rebuttal. Your Honor, there were two issues raised in Mr. Schaeffer's appeal. The first issue is a 404B issue allowing a former friend of Mr. Schaeffer to testify that some four years prior to the events in question, he, Mr. Schaeffer's friend, and Mr. Schaeffer had shot a gun similar to an object Mr. Schaeffer had allegedly used to rob a Subway restaurant. In this case, the government had filed a notice pursuant to Federal Rule of Evidence 404B that it intended to introduce evidence that Mr. Schaeffer had previously possessed actual firearms to counteract Mr. Schaeffer's defense that he had not used actual firearms in the robberies that he committed. In fact, his defense was, I had robbed these places, but I had used fake firearms, airsoft-type guns, things of that nature, to rob the places in question. It was undisclosed in this motion that the 404B testimony that would be offered at trial would involve a friend of Mr. Schaeffer's, a gentleman by the name of Anthony Lashley, and that he would testify that some four years earlier that he and Mr. Schaeffer had shot a gun that looked similar to the object that was used in the robberies. At trial, prior to the testimony of the friend, the trial judge took up the motion. The problem with the testimony was not that it proved Mr. Schaeffer had access to the firearms. He had admitted that. There were several statements taken from Mr. Schaeffer who had given the statement that, in fact, he had bought and sold guns on prior occasions, but that for every gun that he had bought he had turned around and sold it, that he had viewed them as objects to make money on, not for any other purpose. But the purpose of Mr. Lashley's testimony was, in fact, to implant in the jury's mind that the gun that Mr. Schaeffer and his friend had shot some four years earlier was, in fact, the gun used in the subway robbery. After argument, the trial judge ruled that he would allow the testimony, even though it might not be reliable, and the court was very cognizant of the fact that the testimony was probably not going to be reliable, and the court acknowledged that it would have a very strong possibility for prejudice to the jury. Counsel, this is Judge Rogers. Can you hear me all right? Yes, Your Honor, I can. Does this argument relate only to the subway robbery? No, it does not. Because of the nature of the testimony elicited, there was evidence presented. Mr. Schaeffer, in fact, testified that every time that he had robbed one of these places he had used a fake firearm, and in fact a fake firearm had been located in an earlier robbery. The argument is that because this gun, Mr. Lashley's testimony related to a real gun, and then he related it to the gun used in the subway robbery, it was improper in that it prejudged the jury to think that, well, if there was a real gun used in this robbery, then a real gun could have been used in every robbery. So it's not limited to just the subway robbery. Once that testimony came in, it certainly prejudiced the jury as to the defense that Mr. Schaeffer was using in each of the robberies. I see. And it was very strong and very prejudicial testimony. It wasn't just that they had shot a gun four years prior to this event. It was an examination of a blurry video of the subway robbery. Going through, this gun looked like the gun from four years ago. It had the rounded back edge. It was silver. It was an attempt to link that very gun to the events of four years ago and to suggest that that gun in the subway robbery was the gun from four years ago, which is improper because, number one, the time that it passed. And he could not directly say that it was that, but it did prejudice the jury by suggesting that, well, he had a gun – this gentleman had a gun four years ago. Therefore, he must have had a real gun, and if this gentleman is suggesting it's the same gun, then he must have had a gun at every robbery. I think that it just unduly prejudiced the jury. That's Rogers again. I'm not sure I'm following the prejudice. How is the jury thinking wrongly because of this evidence? Well, there is no other reliable evidence that puts a real gun in Mr. Schaffer's hand at any time. There's some co-defendant testimony, but this is an outside person, a person that really has no reason to have an opinion one way or the other about it, that comes in and says, hey, we fired a gun four years earlier, and this gun looks remarkably like this gun to the point that it – says to the jury, in fact, this probably is the real gun. It prejudices the jury to think that, in fact, that Mr. Schaffer had a gun, he fired it four years earlier, and now possibly or probably the same gun is now being used in more robberies. You seem to be saying, this is what I'm confused about, you seem to be saying that no one could believe that it was the real gun, but on the other hand, the jury might believe it's the real gun. I'm not sure. Either it's an irrational conclusion, in which case the jury probably didn't draw it, or it's a rational conclusion in which case it's okay for the jury to draw it. Which is it? No, I don't think – I'm trying not to say that. I apologize, Your Honor. What I'm trying to say is that there's definite testimony that four years prior that he had fired – that Mr. Lashley and Mr. Schaffer had fired a firearm. There's no question about that. But that event is so remote in time that it's not relevant to the events we're talking about today. We're talking about the robberies at the subway, which occurred four years afterwards. But the jury – How does it prejudice them if it's completely not relevant? The jury would not think that was relevant then. It infers that that gun is, in fact, the same gun, although it's from four years earlier. Well, on that point, this is Judge Kethledge, if I may. I understood your argument and actually the government's response to be couched in terms of Rule 404, but looking at the trial judge's explanation of why he admitted this evidence, it seems pretty clear he did not admit this as 404 evidence. He admitted this just as simply relevant evidence, relevant to the question whether the gun possessed during the robbery was a real gun because this gun looked very similar to that gun and was therefore probative that this real gun was that gun. So, I mean, it seems like the analysis we need to do here is simply a Rule 403 analysis. Is that fair or is that accurate in your opinion? Well, because Mr. Lashley was couched as a 404B witness, then – But the district judge admits it as – he discards that rationale and he says it's just simply probative of whether it's a real gun. It's directly probative because this might have been the same gun and that's all it allows the jury to infer. I'm not – I understand the court's rationale and how it looked at Judge Farland's reasoning on this, but Judge Farland sort of drifts back and forth between 403 and 404 in his analysis of it. And I don't know that it's a pure 403 or a pure 404B. It sort of drifts back and forth. Looking at the words of Judge Farland, basically he says that he is going to allow it that in fact it has issues. He recognizes that there are tremendous issues, but that it may or may not be reliable. Well, I don't know what reliable means here. I mean, that's sort of a hearsay concept. I mean, you know, it has some probative value. I mean, if the gun looked totally identical and it was some distinctive gun, I know that's – you would not agree with that. But, you know, hypothetically, if that were true, yeah, I mean, that would have some significant probative value even if it was a few years before. And then the question is whether, you know, there's some kind of prejudice involved that outweighs it. But the reliable – that word just doesn't work here. And it would seem like we just have to say, well, you know, is the probative value of this evidence as to whether the gun, the real gun that Mr. Schaffer shot four years before was the gun used in the robbery, whether that is substantially outweighed by some prejudice here. And the district judge said no because the prejudice could really be diffused by cross. And that seems straightforward. It's a deferential standard of review, and I'm just – I'm kind of wondering why that would be mistaken. Because it in fact is overly prejudicial. It creates in the jury's mind the impression that a gun that cannot be reliably identified – mind you, this is – he's only looking at photographs from a subway store video camera, which I'm sure that everyone on this panel and every lawyer that's practiced criminal law have seen. They're blurry. They're usually stop motion. They don't show much. It's creating an unfair prejudice, an unfair inference in the jury's mind that in fact the prior gun is in fact now the gun that is in fact used in that. And if that gun is real, then the other gun is real. And I apologize, Your Honor. We're over 10 minutes, and I've reserved five minutes. If there are any further questions, I'm glad to answer them. And we will make sure you get your five minutes. Okay, thank you. Could I ask that he briefly address the other issue? I have some questions about it. Would that be all right? Yeah, that's fine. Go ahead. Absolutely. Your Honor, the second issue was the issue of a jail cat or a note. In jail parlance, it's referred to as a cat that is a note passed between inmates. Briefly speaking, at trial, Mr. Ruffin, a co-defendant, had agreed to testify on behalf of Mr. Schaefer that – This is Judge Rogers. This issue does only relate to one of the robberies. Is that correct? It does. It really does. It only relates to the robbery of the drug dealers. Once again, it does go to the overall – With respect to that, there was evidence of the particular gun. Is that correct? Yes. There was a gun that was identified that belonged to a co-defendant that the co-defendant and another, I think, pointed – said that in fact that Mr. Schaefer did have that. And there was specific testimony that they recognized that gun in this case. I'm just wondering whether there could have been any harm from the absence of this letter. Well, Mr. Schaefer's overall defense was, in fact, that he did use fake guns in all of the robberies. I'm talking about just this one instance where the only one that's relevant to this letter. I certainly believe there was harm in that Mr. Ruffin, who refused to testify, unlike the other co-defendants and some others, was not subject to the government's good graces in this particular instance. He was, in fact, afraid of what the government would do to him for his testimony. He had recognized that Mr. Schaefer had had a fake firearm at this point. There is no question that the testimony is very, very clear that another person that was actually present… Pardon me. If you could just have a little bit of time. So basically your answer as to whether this was harmless, even if it was error, is that all of this other overwhelming evidence that in this particular robbery there was a real gun, all of that is sort of tainted by the fact that those people got something from the government? Is that the answer? No, I'm not saying that. I'm saying that it denied Mr. Schaefer the opportunity to put on evidence that, in fact, supported his theory. Everybody else in this did, in fact, receive the government's good graces. I presume that there were 5K1 variances granted in their sentencing and some other things. Well, what about the victims? The victims identified the firearm. They didn't get it from the government, did they? The victims identified a firearm. They said that he held a firearm. I don't know that they were in a particular position, given their previous inconsistent statements about that particular gun. That particular gun, the testimony was very clear, belonged to another co-defendant. There's no question about that. And that other co-defendant asked one of the other gentlemen that testified to hide that gun. So there's no question that another gun had that. If they would have had the testimony about the fake guns, in both instances, if they could have had the testimony for Mr. Ruffin, or certainly the jail cat, recognizing that in fact it was, I think that the failure to do so, in fact, did deny Mr. Schaefer an opportunity to present a fair and full defense, and it did prevent him. Well, that answers my question. Thank you. Okay. Okay. And that's it. I'm at 15 minutes now, so I will pass to Ms. Norris. May it please the Court, Kelly Norris on behalf of the United States. As stated, there are two evidentiary issues before this Court, but this Court must find an abuse of discretion in order to overturn either of the decisions made by the District Court, and clearly there was no abuse of discretion in this case. Turning first to what has been couched as the Rule 404B argument, which may more appropriately be couched as a Rule 403 argument regarding Anthony Lashley's testimony, the United States believes that testimony was properly admitted at trial. As to Rule 404B, the United States notes it is a rule of inclusion, and notes that the defense put that issue as the issue in trial, as already stated in this argument, as well as before the District Court, whether or not real guns were used was the only issue that was advanced by the defense. And the possession or use of a gun was highly relevant in this case regarding the subway robbery. As this Court is aware, there was no firearm that was similar to the subway robbery firearm recovered, but the description provided by Anthony Lashley of the gun that he and Defendant Schaffer had used or shot a few years prior was on par with the description of the firearm that was in the photograph from the subway robbery. They were both silver pistols. The back end was rounded off. They were similar in length. As Anthony Lashley testified, he could judge by Tyler Schaffer, Defendant Schaffer's hand, holding the gun. He could kind of tell the length from the photograph. And he said they looked very similar. And as this Court pointed out, the District Court said that the defense would have the opportunity to cross-examine Anthony Lashley on those points, and it did. Ultimately, the evidence is relevant and was offered for a permissible purpose, not only for opportunity or access to firearms, but yes, in fact, that this was the firearm. How the fact that this defendant possessed and shot with Anthony Lashley a few years prior the exact same firearm, which Anthony Lashley testified he believed to be the same, is not relevant and is beyond the United States. Certainly, that is relevant. It is the gun that was used in the subway robbery. And the time frame and things that Defense Counsel is pointing out were pointed out during the trial, and as this Court noted, the jury could consider. The United States would like to note that there was a discrepancy in its brief that I only discovered last night in preparation for this argument, and that is on page 17 when the United States cited the Frederick case. The United States inadvertently conflated those facts when, in fact, in that case, the witness testified that he had supplied the defendant with multiple handguns, and the United States said in its brief that it also included a rifle that was at issue in that case. The witness said he had provided all those guns two years prior when, in fact, the facts of that case are that the witness testified he provided the defendant with multiple handguns previously, but the actual rifle that was at issue in that case was provided within the same month as what the charge defense date was. And so I apologize to the Court. I just realized that conflation of the facts and wanted to make sure the Court was aware that by no means were we attempting to misstate anything to the Court. But Frederick is still on point in that the 404B evidence was deemed relevant, and in fact, the 404B evidence in that case was even more attenuated than what it is here, because in Frederick, the witness was talking about other firearms that were provided in that case, and in this case, it's seemingly the same firearm, and therefore, if this Court views it as 404B evidence, it was properly admitted for a permissible purpose. We also note that the probative value of the other act was not substantially outweighed by the danger of unfair prejudice. The jury was twice instructed that the defendant's prior possession of guns was for the purpose of access to firearms. And in fact, the District Court actually was conservative in its ruling in that it did not allow other testimony that the United States wanted to admit regarding Anthony Lashley, and that the defendant had a proclivity to carry firearms, and the District Court would not allow that testimony, which seems to be similar testimony to Frederick, which this Court held in 2005 as appropriate. Should this Court find that there's error, it would be harmless. We have the victim's testimony from the subway robbery, in which they both testified the gun appeared real, it was metal, there was no orange tips, they believed the end of the barrel appeared to shoot bullets as opposed to BBs, and they testified that the defendant was very deliberate with where he pointed the firearm, and he never pointed it at himself. Moreover, the defendant's own statement to Investigator Ivey included the fact that he was buying and selling real guns during this time, and he used a real gun in the other robberies and the drug distribution 924C count, as established through the victims of those robberies, the chain of the defendant's possession of that gun, and through the co-defendant's testimony. This evidence was highly relevant to the charge in this case, and the defendant made it as such because he put that issue as the issue of this trial, and whether or not it was a real gun had to be established by the United States and was the issue, and therefore Anthony Lashley's testimony about the gun is relevant and was properly admitted. Turning to the co-defendant Ruffin letter, the district court did an analysis under both Rules 804 and 807, and both of those rules have one factor in common, and that is for the hearsay evidence to be admissible, it has to be supported by corroborating circumstances that clearly indicate its trustworthiness. If it's offered in a criminal case, as one that tends to expose the declarant to criminal liability. Under both rules, this letter fails. Co-defendant Ruffin clearly had a motive to lie. He viewed the defendant to be like a brother. He was apprised of the defendant's legal strategies, and he knew that the defendant faced essentially a lifetime in prison if convicted of all these charges. When we look to the jail calls of co-defendant Ruffin, he tells his father that the government has to drop its gun charges if he came to court and said it was a BB gun. He said that he and defendant Schaffer intended to work together, and it was their word against their charge partner's word, who is co-defendant Jarell Johnson, who did testify at trial. Just showing his general character, he asked his father to reach out to two people that he knew knew the crime victims from the Hobbs Act robbery that was charged in this case, to convince them not to come to court. Everything about co-defendant Ruffin proves to be unreliable, and certainly does not provide us any indication of trustworthiness. This is Judge Rogers. All of that wouldn't apply if this was a letter that he wasn't expecting to be used by anybody other than the person he was writing it to. To him, he says, I know you didn't have a real gun. I'm wondering how all of the rest of that renders that particular part of the letter unreliable. Well, I believe so, Your Honor, and if the court views this as something that he thought would never be used, first of all, the United States believes that he and defendant Schaffer were in kind of cahoots to perpetrate a fraud on the court, quite frankly. But where you're at, and that's another point that I was just about to get to, then this letter doesn't expose him to any criminal liability, which is what the district court pointed out. It's words in itself don't expose the declarant to any criminal liability, and therefore, it doesn't have the requisite guarantee of trustworthiness required by the rules. So the words in and of themselves, if they don't expose him to criminal liability, take it outside the rules regardless. This is Judge Batchelder, but it might have exposed him to either an increased or certainly at least not a reduced sentence. Judge, he originally was not exposed to have any reduced sentence, and the letter in itself does not expose him to any increase in sentence. I think it was alleged in the appellant's brief that, in fact, he did get an increased sentence, but it wasn't the letter itself that was the issue. It was all of the further conduct he took in court to continue to perpetrate this fraud on the court. Not only is this letter, in itself, the words would not have caused the United States to seek any type of upward departure or variance, but when he comes into court and makes himself unavailable and lies, choosing to answer some questions and not answer others when the district court has ordered him to do so, that's when this letter becomes an issue for him with criminal liability. And it's contrary to the guilty plea, his own plea agreement, which is document 50 in the record, where he says under oath and amidst under oath, that defendant Schaefer had a firearm. So there are no indications of any trustworthiness surrounding this letter, and therefore... But if he came in and then said, well, he didn't have a firearm, he had a fake firearm, then he clearly put himself in a little bit of a tenuous position with regard to what was in his plea agreement and what was expected of him, right? If he were to come in and testify to that effect? Yeah. Potentially, but that's not what this is. This is trying to get... He's not testifying, so we're under the hearsay rules with declaring unavailable, and under those rules, there's more required than just some statement from a witness. It's required that we have to have some corroborating circumstances that clearly indicate his trustworthiness and exposes him to criminal liability. This letter in itself does not expose him to criminal liability, and therefore, it doesn't qualify under the rules. And so... But this is Judge Rogers, but your argument is that even if it did, it needs corroborating circumstances that it lacks. Is that correct? Absolutely, Your Honor, yes. And it lacks them both because of... What would be a typical kind of thing that would have been corroborating? What are we looking for that this lacks? I think the fact of all of the other circumstances surrounding the letter, to include Codefendant Ruffin's motive to lie and his jail calls, all the circumstances surrounding it show that this letter... Without that, it might have been corroboration. I'm not understanding that. So it's the presence of countervailing information, eliminates some sort of corroboration that's floating out there? Is that the idea? I guess that is potentially the fact in this case. There was no corroborating evidence, so... But I'm asking, what are we looking for? What kind of corroborating evidence would there be? I don't know what... I mean, he wrote it. He ostensibly wrote this letter. Agreed. And I guess... I'm not sure what that corroboration would be, but it certainly does not exist in this case. There certainly are no circumstantial guarantees of trustworthiness regarding Codefendant Ruffin in this case. Maybe if we had other jail calls or other lack of a motive for him to lie, something in this letter that maybe could be corroborated elsewhere. I mean, as a judge, I believe you were pointing out regarding your harmless error analysis, this very case, we had... The real gun was recovered. We had the chain of where the gun was sold ultimately to Defendant Schaefer and how it ended up in a storm drain. And then we had all of the victims from the two robberies and the defendant's co-defendant saying this is the gun that was used. So there certainly is... So they actually... This is an alternative argument now that you're making, is that correct? In a way, yes. I guess I'm showing that there's no indicia of reliability to this letter. Well, that's different from harmless error, isn't it? Can you say that there's no... You need corroboration. You don't have corroboration. But even if you did have corroboration, this is not... This was harmless error. Is that the... I guess the point for harmless error also goes towards the point for why it lacks any indication of trustworthiness. The court had heard all of that testimony and knew all of that. And that goes not only to why Defendant Ruffin... You could have a statement that has some indicia or it has some corroboratory indications that there's overwhelming evidence to the contrary and you could have it when there was no evidence to the contrary. I don't see how evidence to the contrary is determining whether the particular piece of evidence is corroborated. I guess I'm not following that. I guess the... Maybe with some overlapping arguments. Your opposing counsel was hesitant to agree that these witnesses testified that that was the gun. But you're saying that the testimony is that the victim said, yes, that's the gun? Yes, that is my recollection of the trial, that every one of them said that is the gun. Thank you. Ms. Norris, your 15 minutes is up. Thank you. Your Honors, we just ask that the court affirm the trial court conclusions and the verdict in this case. Good morning again, Your Honors. I think, honestly, we have touched upon all the issues that I hoped to raise. And if I didn't, Ms. Norris has. I would then just ask if the court has questions, I'd be happy to address those questions at this point. This is Judge Rogers. Is it still your memory of the record that there wasn't specific testimony that this was the actual gun? Well, I don't believe that the gun that they identified was a gun that was owned by a co-defendant, Jarrell Johnson. I'm not saying that it wasn't specifically identified. I'm just not certain that it was specifically identified as Mr. Schaeffer's gun. I may be incorrect about that. It's been a long time since I've looked at that portion of the record. I apologize, Your Honor. That's fair. Thank you. I think we do not have further questions, unless someone else does.  Okay. Thank you, Counsel.